## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| NAEEM BETZ, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 15-01376 (RC) |
| | : | | |
| v. | : | Re Document No.: | 9 |
| | : | | |
| FIRST CREDIT SERVICES, INC., | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING DEFENDANT'S MOTION TO DISMISS

## I.  INTRODUCTION

On August 25, 2015, *pro se* Plaintiff Naeem Betz filed this action against Defendant First

Credit Services ("First Credit") alleging various violations of the Fair Debt Collection Practices

Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., the Telephone Consumer Protection Act ("TCPA"),

47 U.S.C. § 227, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, and the District of

Columbia Debt Collection Law ("DCDCL"), D.C. Code § 28-3814 *et seq.*. *See* Compl., ECF No.

1. Defendant filed a partial motion to dismiss, addressing all the claims except the TCPA claim.

*See* Def.'s Mot. Dismiss, ECF No. 9. For the reasons explained below, the Court will grant

Defendant's motion to dismiss Counts I, II, IV, and V of the Complaint.

## II.  FACTUAL BACKGROUND

First Credit sent a letter to Naeem Betz, dated October 28, 2014, informing him that one of

its clients, Gold's Gym, referred Mr. Betz's account to it for collection. *See* Compl. Ex. A at 2,

ECF No. 1-1. The letter stated that it is seeking to collect $249.92, the remaining balance from

his membership account with the gym. *Id.*

In the letter, underneath a table displaying the amount he owes, was a note that included the following disclaimer:

> UNLESS YOU NOTIFY THIS OFFICE WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME THE DEBT IS VALID.

*Id.*[1] Below this note, the letter contained a footer, also in all capital letters, that says "This communication is from a debt collector." *Id.*[2]

During this time, Mr. Betz claims he also received several "harassing telephone calls" by First Credit "attempt[ing] to collect the alleged debt." Compl. at 4.[3] In response, on November 13th, Mr. Betz sent First Credit an e-mail and a fax requesting it to "cease and desist any and all collection activity until [First Credit] provides . . . verification/proof of claim." Compl. Ex. B at 12-1, ECF No. 1-1.[4]

---

[1] The same note included the following:

> IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN 30 DAYS FROM RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A COPY OF A JUDGMENT AND MAIL YOU A COPY OF SUCH JUDGMENT OR VERIFICATION. IF YOU REQUEST THIS OFFICE IN WRITING WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THIS OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.

Compl. Ex. A at 2.

[2] The body of the letter also says, "Please understand that if this debt is not resolved, it may be reported to the credit bureaus and negatively affect your credit rating." Compl. Ex. A at 2.

[3] In support of his claim, Plaintiff provides screenshots of his cellular phone displaying "only a few of the phone calls," he received from an unidentified phone number. Compl. Ex. C at 18-21, ECF No. 1-1.

[4] Because Plaintiff has not provided page numbers on his exhibits, the Court cites the page numbers provided by ECF.

More than a month later, on December 26th, Mr. Betz received an e-mail alert notifying him that a new account had appeared on his credit report from Transunion, a credit reporting agency. Compl. at 16; *see* Compl. Ex. D at 22, ECF No. 1-1. Prompted by the notification, Mr. Betz obtained this credit report and confirmed that the new "adverse account" was reported by First Credit. Compl. at 6; *see* Compl. Ex. D at 24. Mr. Betz immediately contacted Transunion to dispute the alleged debt and request an investigation.[5] Compl. at 6. Three days later, Transunion updated Mr. Betz's credit report by deleting the adverse account from his profile. Compl. at 6; *see* Compl. Ex. E at 27, ECF No. 1-1.

In a related incident, two separate letters, dated December 23, 2014, and addressed to Mr. Betz, show that First Credit responded to complaints received by the Better Business Bureau ("BBB") and the Consumer Financial Protection Bureau ("CFPB").[6] Compl. Ex. E at 30-3. In these letters, First Credit wrote that Mr. Betz expressly consented to being contacted via telephone but that it "will consider [his] . . . complaint a written cease and desist request and cease all activity on the account." *Id.*

---

[5] In the dispute form he submitted to Transunion, Mr. Betz referred to many of the same allegations that underlie his complaint: "a deceptive form to attempt to collect an alleged debt"; that the dunning letter was sent to him "in a false and misleading way"; that he disputed the letter First Credit sent him via e-mail and fax; and that his cell phone was called several times "without [his] express written consent."  Compl. Ex. E at 28.

[6] The letters Plaintiff attaches to his complaint, while being addressed to him, appear to be copies of responses sent by Defendant to the business bureaus (who received Plaintiff's complaints). *See* Compl. Ex. E at 30-1. Both Plaintiff and Defendant state that these communications were submitted to the bureaus, and not to Plaintiff. Compl. at 8; Def.'s Mot. Dismiss at 8. While this Court is unclear how Plaintiff obtained these letters or who in fact they were sent to, it must accept Plaintiff's claims on their face, and assume these communications were not between the opposing parties.

### III.  ANALYSIS

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam).  A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A court considering such a motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor. *See, e.g.*, *Redding v. Edwards*, 569 F. Supp. 2d 129, 131 (D.D.C. 2008). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–14 (2002); *Bryant v. Pepco*, 730 F. Supp. 2d 25, 28–29 (D.D.C. 2010).

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombley*, 550 U.S. at 555-56 (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss.  *Iqbal*, 556 U.S. at 678.  A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of the legal conclusions that are couched as factual allegations.  *See Twombly*, 550 U.S. at 555.

A *pro se* complaint, however, is held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (internal quotation marks omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). But even *pro se* litigants "must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" *Jones v. Horne*, 634 F.3d 588, 596 (D.C. Cir. 2011) (internal quotation marks omitted) (quoting *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009)). Moreover, "[a] pro se complaint, like any other, must present a claim upon which relief can be granted." *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981) (per curiam).

## A.  FDCPA (Counts I and II)

Plaintiff alleges violations of the FDCPA, 15 U.S.C. §§ 1692g(a) and 1692e.  *See* Compl. at 7-10.  The relevant portions of 15 U.S.C. § 1692g(a) set requirements relating to the validation of debts by establishing the specific information debt collectors must include in their initial communications with the consumer. Plaintiff's allegations focus specifically on sub-provision (3), which states that a debt collector must communicate to the debtor, either in the initial communication or within five days of the initial communication, information that includes "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." 15 U.S.C. § 1692g(a)(3).

Plaintiff's claims are based on a difference between the language used in the statute and the language used in one sentence of Defendant's letter. While the rest of the sentence in question is identical to the statute's, the last clause contains a deviation: the statute states, "the debt will be assumed to be valid by the debt collector," but the disclaimer in Defendant's letter instead reads, "this office will assume the debt is valid." Compl. Ex. A at 2. Plaintiff contends

this difference "conveys to the least sophisticated consumer that the Debt will be assumed to be valid by anyone, not just Defendant," and leads Plaintiff to believe that the "failure to dispute this alleged debts [sic] within thirty (30) days after receipt of the [Dunning Letter] will result in Plaintiff losing or waiving the ability/right to ever dispute their debts with any other entity." Compl. at 8.

Although Plaintiff identifies a narrow difference in text, his claim ignores that the meaning of the letter's language is indistinguishable from the statute's.[7] In addition to substituting "this office," Plaintiff adds a disclaimer on the bottom of the same page that states (in all capital letters), "This communication is from a debt collector." Compl. Ex. A at 2. Thus, the letter makes clear that Plaintiff's debt will be assumed valid by a specific entity, "the office," and not "by anyone." *See id.* The language leaves no uncertainty the letter is being sent from a debt collection office – exactly what the statute's validation requirements command.

Additionally, while the Court acknowledges the Plaintiff's reference to the "least sophisticated consumer" standard, already adopted by multiple Circuit Courts, our own Circuit has not yet decided whether this standard governs contested language in collection letters under the FDCPA.[8] *See Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008);

---

[7] Plaintiff cites *Fariasantos v. Rosenberg* to claim that by omitting the phrase, "by the debt collector," Defendant has violated the FDCPA's validation requirements. *Fariasantos v. Rosenberg & Associates, LLC*, 2 F. Supp. 3d 813, 822-23 (E.D. Va. 2014). However, in contrast to First Credit's letter, which merely replaced "this office" for "debt collector," the language that the *Fariasantos* court found failed to satisfy the statute's requirement left out this clause entirely – without any replacement. *Id.* at 822. While the court held that this omission was indeed a failure to fulfill the statute's obligations, it also said that debt collectors were not required to mirror the statute's exact language in their communications with consumers. *See id.* (debt collectors "need not use the verbiage, 'by the debt collector' in their letters") (internal quotation marks and citations omitted).

[8] The Seventh and Eighth Circuits have adopted the similar, but more lenient "unsophisticated consumer" standard. *See Zemeckis v. Global Credit & Collection Corp.,* 679

*Wilson v. Quadramed Corp.,* 225 F.3d 350, 354 (3d Cir. 2000); *Federal Home Loan Mortg. Corp. v. Lamar*, 502 F.3d 503, 509 (6th Cir. 2007); *United States v. Nat'l Fin. Servs., Inc.,* 98 F.3d 131, 136 (4th Cir. 1996). Even if applied, this standard would not save Plaintiff's claims. While its purpose is "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd," the standard still "preserves a quotient of reasonableness and presum[es] a basic level of understanding and willingness to read with care." *Wilson*, 225 F.3d at 354-55 (citing *Nat'l Fin. Servs.*, 98 F.3d at 136).

Construed under this liberal standard, Plaintiff's assertions still fail to demonstrate a reasonable interpretation of Defendant's letter that would be meaningfully different from the validation requirements of 1692g(a)(3).[9] The Court does not see how any possible interpretation of the letter's text could lead a reasonable consumer to believe something different than what the FDCPA demands; and this Court, like others, does not believe that debt collectors are resigned to a word-for-word replication of the statute's language in order to comply with its requirements. *See, e.g., Fariasantos v. Rosenberg & Associates, LLC,* 2 F. Supp. 3d 813, 822-23 (E.D. Va. 2014) (debt collectors "need not use the verbiage, 'by the debt collector' in their letters"). As other courts have noted, while the "least sophisticated" consumer standard is "meant to protect naïve customers, it is not meant to impose liability on defendants based on "bizarre or

---

F.3d 632, 635 (7th Cir. 2012); *Duffy v. Landberg*, 215 F.3d 871, 873 (8th Cir. 2000). Plaintiff's claims would fail this standard for the same reasons as those cited above.

[9] To date, two Judges on this Court have already applied the "least sophisticated consumer" standard to FDCPA claims; a third has acknowledged the standard but not expressly applied it. *See Jones v. Law Office of Davis Sean Dufek, and Cach, LLC,* 77 F. Supp. 3d 134, 138 (D.D.C. 2015) (RJL) (acknowledging the standard); *Mazza*, 852 F.Supp. 2d at 36 (EGS) ("The test for determining potential violations of the FDCPA is an objective standard based on the 'least sophisticated consumer'") (citing *Maguire v. Citicorp Retail Servs.*, 147 F.3d 232, 236 (2d Cir. 1998)); *Fed. Trade Comm'n v. Capital City Mortgage Corp.*, No. 98 Civ. 237, 1998 WL 1469619, at *5 (D.D.C. July 13, 1998) (JLG) (also citing *Maguire*).

idiosyncratic interpretations of collection notices." *E.g., Jacobson*, 516 F.3d at 90; *Wilson,* 225
F.3d at 354; *Nat'l Fin. Servs.*, 98 F.3d at 136.

Plaintiff also asserts that Defendant "willfully deceived the [BBB] and the [CFPB] "by
failing to state their status as a debt collector." Compl. at 8–9. Plaintiff, however, does not
identify how Defendant's failure to identify itself in these letters is a violation of the FDCPA,
which imposes liability only when a debt collector communicates with consumers, not with other
parties. *See* 15 U.S.C. § 1692g(a) ("a debt collector shall . . . send the *consumer* a written
notice") (emphasis added). Without alleging any actions on the part of Defendant that would
specifically impose liability under this provision, Plaintiff's assertions lack the "factual matter"
for a plausible claim. *See Iqbal*, 556 U.S. at 678.

Plaintiff further alleges that Defendant violated 15 U.S.C. § 1692e, under which "a debt
collector may not use any false, deceptive, or misleading representation or means in connection
with the collection of any debt." Compl. at 9. Plaintiff applies his arguments from Count I to this
provision: he states that (1) Defendant's letter led him to believe that a failure to dispute the
alleged debts would "result in losing [his] ability to ever dispute the alleged Debts [sic] with any
other entity" and that (2) Defendant "willfully deceived" the BBB and CFPB in its response
letter. *See id.* The inadequacies with Plaintiff's allegations, however, do not change under this
provision. His (1) interpretation of Defendant's letter remains untenable and (2) his allegations
relating to Defendant's response letters to the bureaus do not state a cause of action under 1692e.

 In addition to these previously asserted allegations, Plaintiff also claims that the
following language is "materially false":

> If you choose to dispute the debt, or any portion thereof, you must notify us within thirty
> (30) days of the date you receive this letter.

Pl's Opp. at 8. This sentence, however, is nowhere to be found in Defendant's letter. *See* Compl.

Ex. A at 2. Instead, the letter says that if the consumer "notif[ies] this office in writing within 30

days" that he disputes the debt, the "office will obtain verification of the debt" and send it to him.

Compl. Ex. A at 2 (printed in all capital letters). On the basis of this error, Plaintiff makes further

contentions that Defendant has failed to comply with certain FDCPA requirements; however, the

actual corresponding language in the letter fully comports with the requirements Plaintiff

identifies. This Court "cannot discern a basis for a claim under Section 1692e" if Plaintiff does

not identify any false or misleading statements. *See Mazza v. Verizon Washington DC, Inc.,* 852

F. Supp. 2d 28, 38 (D.D.C. 2012). Accordingly, the Court grants Defendant's motion to dismiss

Counts I and II.

## B.  DCDCL (Count IV)

Plaintiff alleges a violation of the DCDCL similar to his claims under the FDCPA. He

contends that Defendant's actions violated section 28-2814(f)(2), which provides that a debt

collector shall not "use any fraudulent, deceptive, or misleading representation or means to

collect or attempt to collect claims . . . by the failure to clearly disclose in all written

communications . . . that the creditor or debt collector is attempting to collect a claim and that

any information obtained will be used for that purpose."  D.C. Code § 28-3814(f)(2). Plaintiff

repeats his assertions that Defendant's debt collection letter "willfully tried to be fraudulent

deceptive, or misleading." Compl. at 13. He likewise re-asserts his claims that Defendant's

communications with the BBB and the CFPB were "false, deceptive, or misleading." Pl.'s Opp.

at 9.

While Plaintiff never expresses how he was misled, this Court assumes the basis for his

assertions is the same as those underlying his FDCPA claims. Namely, that the disclaimers in

Defendant's letter misled Plaintiff to believe his debt would be considered "valid in general," not just by Defendant, and that he would "los[e] the ability to ever dispute the alleged [d]ebts with any other entity" thirty days after receiving the letter. *See* Compl. at 10. For the same reasons explained above – with respect to Plaintiff's allegations about the letter and the Defendant's communications with the BBB and CFPB – this Court finds that Plaintiff fails to state a plausible claim for relief and therefore grants Defendant's motion to dismiss Count IV.

## C.  FCRA (Count V)

Plaintiff alleges that Defendant violated the FCRA because it lacked a "permissible purpose to pull or access [his] credit report." Compl. at 18. Under 15 U.S.C. § 1681b(f), "a person shall not use or obtain a consumer report for any purposes unless . . . the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section." The showing of a permissible purpose, however, is "a complete defense to a claim under 1681b." *Betz v. Jefferson Capital Systems, LLC*, 68 F. Supp. 3d 130, 133 (D.D.C. 2014).

The FCRA expressly permits distribution of consumer reports to entities that "intend to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." 15 U.S.C. § 168b(a)(3)(A). It is established, therefore, that debt collection is a permissible purpose to obtain a consumer credit report under the FCRA. *Huertas v. Galaxy Asset Mgmt.,* 641 F.3d 28, 34 (3d Cir. 2011); *Pintos v. Pac. Creditors Ass'n*, 504 F.3d 792, 796 (9th Cir. 2007), *opinion withdrawn and superseded on other grounds*, 565 F.3d 1106 (9th Cir. 2009); *Phillips v. Grendahl*, 312 F.3d 357, 366 (8th Cir. 2002), *abrogated on other grounds*, *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 127 (2007); *Stergiopoulos v. First Midwest Bancorp, Inc.*, 427 F.3d 1043, 1046–47 (7th Cir. 2005).

First, Plaintiff concedes that Defendant is, in fact, a debt collector, Compl. at 2, and then adds nothing further to his allegations other than "'formulaic recitations of the elements of his cause of action that, without more, fail to state [a] claim." *See Betz*, 68 F. Supp. 3d at 133 (quoting *Twombly*, 550 U.S. at 155); *Betz v. Matte*, 2013 WL 5603846, at *2 (E.D.N.Y. Oct. 10, 2013). Because of this concession and his failure to allege any facts to support a reasonable inference that Defendant obtained the credit report for "any purpose other than to collect on a delinquent account," Plaintiff's FCRA claims fail to state a claim under section 1681b. *See Betz*, 68 F. Supp. 3d at 133.

Plaintiff also claims that Defendant violated the FCRA by acquiring his credit report without first obtaining a "valid written authorization" pursuant to 15 U.S.C. § 1681b(a)(2). Compl. at 17. This provision of the FCRA, however, imposes liability on consumer reporting agencies that furnish consumer reports, not debt collectors, such as Defendant, who request the reports. *See* 15 U.S.C. § 1681b(a) ("any *consumer reporting agency* may furnish a consumer report under the following circumstances . . . .) (emphasis added).[10] Accordingly, this Court grants Defendant's motion to dismiss Count V as well.

---

[10] Moreover, Plaintiff misunderstands the statute to require that all three of its conditions need to be satisfied before a report can be permissibly furnished. Instead, the FCRA recognizes three independent circumstances when an agency is allowed to furnish a report to an outside person. *See* 15 U.S.C. 1681b(a). If any one of these circumstances is present or satisfied, including furnishing the report to a debt collector, then the agency has properly followed the law. *Id.*

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Counts I, II, IV, and V is granted. Defendant shall answer the claims contained in Count III within 14 days of this opinion. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 29, 2016                                        RUDOLPH CONTRERAS
                                                             United States District Judge